IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION | ) ) ) Case No.  3:21-md-3004-NJR ) |
| **This Document Relates to:** *Williford v. Syngenta Crop Protection LLC*, Case No. 3:23-pq-2887 | ) MDL No.  3004 ) ) Hon. Judge Nancy J. Rosenstengel ) |

**DEFENDANT SYNGENTA'S OPPOSITION TO PLAINTIFFS
ALLEN AND LYNDA WILLIFORD'S MOTION FOR
ENTRY OF A SCHEDULING ORDER AND TRIAL SETTING**

Having abandoned their trial date in Florida state court, the *Williford* Plaintiffs now seek to disrupt the orderly bellwether process this Court has used for years to successfully manage the Paraquat MDL.  Years ago, the *Williford* Plaintiffs fought tooth and nail to keep this case ***out*** of this Court—naming, for example, an in-state defendant for the sole purpose of defeating this Court's jurisdiction.  They sought and obtained a January 2024 trial date in Florida state court, which promised to be the first trial in the nation for a plaintiff alleging that paraquat causes Parkinson's Disease.  But when the same Florida state court rejected the *Williford* Plaintiffs' motion to seek punitive damages from Syngenta at that trial, they abandoned their trial date entirely, choosing instead to dismiss the in-state defendant and permit this case to be removed and transferred to this Court.  Ten months after that removal, however, Plaintiffs now seek to set *Williford* for trial and to evade entirely the bellwether process this Court has used from the outset to manage and progress this litigation.

Unsurprisingly, the *Williford* Plaintiffs are unable to identify a single precedent for their remarkable position—no case stands for the proposition that a sole case should be privileged for expedited trial, and that a careful bellwether selection process already in place should be ignored, all in a forum that plaintiffs spent years evading.

1

And finally, to be clear, *Williford* is far from the "nearly trial-ready" image painted by Plaintiffs. All the Court need do to prepare this case for trial, the *Williford* Plaintiffs contend, is to rule on dispositive motions and expert challenges. But that is misleading. The *Williford* Plaintiffs' motion fails to disclose the critical differences between expert discovery in federal court and in Florida state court. Most notably, the Florida Rules of Civil Procedure (unlike the Federal Rules) do not require the submission of expert reports. Here, the *Williford* Plaintiffs chose not to serve any expert reports while this litigation was pending in Florida, so expert discovery would have to start anew in compliance with the Federal Rules.

## BACKGROUND

***Williford* Procedural History.** On July 29, 2021, the *Williford* Plaintiffs filed this action, *Williford v. Syngenta Crop Protection LLC*, in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, case number 21-CA-006219, asserting claims based on Allen Williford's exposure to paraquat-containing products and subsequent diagnosis with Parkinson's disease. The *Williford* Plaintiffs' original Complaint asserted claims for strict liability design defect, strict liability failure to warn, negligence, breach of implied warranty of merchantability, punitive damages, and loss of consortium against Syngenta, Chevron U.S.A. Inc. ("Chevron"; collectively, "Defendants"), and Council-Oxford, Inc. ("Council-Oxford"). *Williford*, Case No. 21-CA-006219, Dkt. No. 4. The *Williford* Plaintiffs served Syngenta and Council-Oxford—but did not serve Chevron. *See id.*, Dkt. No. 39

On September 22, 2021, Syngenta and Chevron removed this case to the Middle District of Florida based on both diversity and federal question jurisdiction, *Williford v. Syngenta Crop Protection LLC*, No. 8:21-CV-2240 (M.D. Fla. Sept. 22, 2021), ECF No. 1, and then tagged it for transfer to this MDL, *In re: Paraquat Prods. Liab. Litig.*, MDL No. 3004 (J.P.M.L. Sept. 24,

2021), ECF. No. 187-1. Plaintiffs then moved to remand on an "emergency" basis in the Middle District of Florida, *Williford*, No. 8:21-CV-2240 (M.D. Fla. Oct. 5, 2021), ECF No. 12, and, in the Judicial Panel on Multidistrict Litigation ("JPML"), to vacate the Panel's Conditional Transfer Order, *Williford v. Syngenta Crop Protection LLC*, No. 21-CV-2240 (J.P.M.L. Oct. 15, 2021), ECF No. 12, vigorously defending their choice of forum in Florida state court. On November 5, 2021, the Middle District of Florida remanded the case, concluding diversity did not exist because the *Williford* Plaintiffs properly named, and thus did not fraudulently join, defendant Council-Oxford—the only defendant with Florida citizenship. *Id.*, ECF No. 19.

On January 5, 2022—after Syngenta's motion to dismiss, Council-Oxford's motion to strike, and the *Williford* Plaintiffs' agreement to dismiss certain claims—the state court dismissed, among other things, their claim for punitive damages without prejudice. *Williford*, Case No. 21-CA-006219, Dkt. No. 20.[1]

On February 18, 2022—after the service deadline and 204 days after filing the Complaint—the *Williford* Plaintiffs finally served Chevron. *Id.*, Dkt. No. 34. Soon thereafter, based on the *Williford* Plaintiffs' failure to effectuate timely service, Chevron moved to dismiss. *Id.*, Dkt. No. 39. The state court eventually dismissed Chevron from the case based on that failure. *Id.*, Dkt. No. 49.

On November 23, 2022, the state court entered an Amended Case Management Order with fact and expert discovery deadlines, *id.*, Dkt. No. 94, and eventually set a trial date of January 8,

---

[1] *See also Williford*, Case No. 21-CA-006219, Dkt. No. 15 (Syngenta's motion to dismiss the Complaint's implied warranty and punitive damages claims); *id.*, Dkt. No. 17 (Council-Oxford's motion to strike the Complaint's claims for punitive damages and attorneys' fees); *id.*. Dkt. No. 18 (Plaintiff's response to Syngenta's Motion to Dismiss); *id.*. Dkt. No. 19 (Plaintiffs' response to Council-Oxford's motion to strike).

2024, *id.*, Dkt. No. 140. None of the *Williford* Plaintiffs' experts submitted expert reports during discovery.

On March 27, 2023, the *Williford* Plaintiffs filed a motion for leave to amend their Complaint to reassert their claims for punitive damages. *Id.*, Dkt. No. 178. Syngenta opposed, and on May 23, 2023, after a three-hour hearing, the state court denied the *Williford* Plaintiffs' punitive damages motion from the bench, holding they failed to "satisf[y] the burden of showing that the conduct Syngenta engaged" meets the standard for seeking punitive damages under Florida law. *Id.*, *Hr'g Tr.* at 164:9-13, Dkt. No. 425; *id.*, Clerk's Min. of Hr'g, Dkt. No. 419.

Once the state court had denied the *Williford* Plaintiffs' second effort to assert punitive damages, the *Williford* Plaintiffs were faced with a choice: (1) proceed with their January 8, 2024 trial date (without being able to assert punitive damages); or (2) voluntarily dismiss the only non-diverse defendant (Council-Oxford), knowing that such action would result in removal and eventual transfer to the MDL, where bellwethers had already been selected and Rule 702 briefing was underway. On July 18, 2023, the *Williford* Plaintiffs chose option (2) and voluntarily dismissed Council-Oxford with prejudice, thereby effectively abandoning their trial date. *Id.*, Dkt. No. 423. Accordingly, Syngenta removed this action to the Middle District of Florida for the second time. *Williford v. Syngenta Crop Protection LLC*, No. 8:23-CV-1731 (M.D. Fla. Aug. 3, 2023), ECF No. 1.

Shortly after removal, the Middle District of Florida dismissed the Complaint *sua sponte* as an impermissible "shotgun pleading." *Id.*, ECF No. 8. On August 17, 2023, the *Williford* Plaintiffs filed a First Amended Complaint ("FAC") which realleged the claims for punitive damages dismissed by the state court. *E.g.*, *id.*, ECF No. 10 ¶¶ 103-05. After Syngenta raised the improper punitive damages claim as violating both the state court and the Middle District of

Florida's orders, the *Williford* Plaintiffs quickly filed an updated version of their FAC which did not include the previously dismissed claims for punitive damages. *Id.*, ECF No. 13; *see also* Ex. A (8/17/2023 Eml. From J. Webb to D. Dickens).

On August 21, 2023, the JPML transferred this action to the Paraquat MDL. (MDL ECF No. 4739).[2] In the ten months since transfer, the *Williford* Plaintiffs have made no effort to move their individual case forward until filing their Motion for Entry of a Scheduling Order on June 14, 2024. (*Williford* ECF No. 22).

***In re Paraquat* Procedural History.** While *Williford* moved forward in Florida state court, this Court has progressed this MDL through a series of Case Management Orders and a careful bellwether process. Cases concerning allegations of paraquat and Parkinson's disease against Syngenta and Chevron were first transferred to and coordinated in this Court more than three years ago on June 8, 2021. (MDL ECF No. 1). And since that first transfer order, the Court has diligently managed a growing number of member cases and increasingly complex discovery needs, including by issuing Case Management Orders designed to efficiently facilitate Plaintiff-specific discovery and resolution of common issues of law and fact. Included in these orders was Case Management Order No. 12, which, "[i]n the interest of effective and efficient case management of this complex litigation," established "procedures … for the identification and selection of individual cases to be tried in this MDL." (MDL ECF No. 587). The Court eventually identified sixteen cases for limited fact discovery, with the MDL Plaintiffs selecting eight and Syngenta and Chevron together selecting eight. (MDL ECF. No. 803).

---

[2] Citations to the master docket for *In re Paraquat Products Liability Litigation*, No. 3:21-MD-3004, are formatted as: (MDL ECF No.). Citations to the docket in the member case *Williford v. Syngenta Crop Protection LLC*, No. 3:23-pq-02887, are formatted as: (*Williford* ECF No.).

After limited fact discovery, the parties submitted confidential one-page reports describing each case's strengths and weaknesses. (MDL ECF No. 1116). Based on its *in camera* review of the parties' reports, the Court selected six cases for full case-specific fact and expert discovery. (MDL ECF No. 1317). The parties then completed fact and expert discovery—including exchanging expert reports under Federal Rule of Civil Procedure 26(a)(2)(B)—and filed cross-motions to exclude expert testimony under Federal Rule of Evidence 702, and cross-motions for summary judgment. At the conclusion of expert discovery, the MDL Plaintiffs dismissed two of these cases with prejudice. (MDL ECF No. 4239 (dismissal); 4242 (Case Management Order No. 18 describing the voluntary dismissal of the *Marx*, No. 3:21-pq-00922, and *Walkington*, 3:21-pq-00601, actions)).

Following extensive briefing and hearing, the Court granted Syngenta and Chevron's joint motion to exclude MDL Plaintiffs' only general causation expert, Dr. Martin Wells, holding that his proffered opinions were not admissible under Rule 702. (MDL ECF No. 5237). Because Plaintiffs lacked any general causation testimony, the Court further Syngenta and Chevron's joint motion for summary judgment and entered judgment in favor of Syngenta and Chevron in the four remaining bellwether cases. (MDL ECF No. 5238).[3] The Court also identified next steps for the MDL, stating it "intend[ed] to expeditiously identify a new set of trial cases and set a tight schedule for limited discovery and trial." (*Id.* at 8). As it had done before, the Court directed the MDL Plaintiffs to identify eight cases and Syngenta and Chevron to identify eight cases between them. (*Id.*).

---

[3] The Rule 702 and summary judgment rulings are currently on appeal to the Seventh Circuit. *See Richter v. Syngenta Crop Protection, LLC*, No. 24-1865; *Burgener v. Syngenta AG*, No. 24-1866; *Coward v. Syngenta AG*, No. 24-1867; *Fuller v. Syngenta Crop Protection, LLC*, No. 24-1868.

**ARGUMENT**

**I. HAVING ABANDONED THEIR TRIAL DATE IN STATE COURT, THE *WILLIFORD* PLAINTIFFS CANNOT SKIP THE LINE IN THE MDL.**

For years, the *Williford* Plaintiffs did all that they could to avoid this Court and to pursue a trial in state court in Florida. It was only after the state court rejected the *Williford* Plaintiffs' effort to seek punitive damages from Syngenta for a second time that they abandoned their Florida trial date and permitted this case to be removed and then transferred to the MDL. Ten months after they abandoned their Florida trial date, the *Williford* Plaintiffs now seek to disrupt the orderly bellwether process that this Court established years ago, and to jump the line over thousands of other cases that have been in the MDL far longer than the *Williford* Plaintiffs. Even the *Williford* Plaintiffs' own authority, however, does not require ignoring bad faith conduct or the careful selection process already established by this Court. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006).

To be clear, for years, *Williford* was not in state court by accident—it was a strategic and studied effort by the *Williford* Plaintiffs to avoid this Court's jurisdiction. As the *Williford* Plaintiffs candidly admitted in their original Complaint, they had added Council-Oxford as "a local defendant for purposes of defeating removal and diversity jurisdiction." (*Williford* ECF No. 1, Ex. A at ¶ 7). When Syngenta removed the case for the first time, the *Williford* Plaintiffs filed an "Emergency Motion to Remand" to prevent the transfer of the case to this court, accusing Syngenta of "[t]ry[ing] every trick in the book to delay a properly filed state claim" against Council-Oxford. (*Williford* ECF No. 12 at 14).

The *Williford* Plaintiffs' efforts were at first successful. They sought and obtained the first trial date in the country for a case alleging that paraquat causes Parkinson's Disease—January 2024. But after extensive briefing and hearing, the Florida court denied the *Williford* Plaintiffs'

7

effort to state a claim for punitive damages against Syngenta on May 23, 2023. *Williford*, Case No. 21-CA-006219, Dkt. No. 419. At that point, rather than proceed to trial without the ability to seek punitive damages, the *Williford* Plaintiffs voluntarily dismissed its claims against Council-Oxford. *Id.*, Dkt. No. 423. *Williford* was then promptly removed to federal court and tagged for transfer to this Court thereafter. Having forfeited their trial date in Hillsborough County Circuit Court, the *Williford* Plaintiffs cannot now jump to the front of the bellwether line in the Paraquat MDL.

## II. THE *WILLIFORD* PLAINTIFFS SHOULD NOT BE PERMITTED TO DISRUPT THE COURT'S ESTABLISHED BELLWETHER SELECTION PROCESS.

The *Williford* Plaintiffs' effort to skip the line is particularly inappropriate given that it would disrupt the bellwether process this Court established years ago. MDL Courts, by statute, are tasked with managing consolidated "civil actions involving one or more common questions of fact" to "promote the just and efficient conduct" of those actions. 28 U.S.C. § 1407(a). And "[d]istrict courts handling complex, multidistrict litigation," the Seventh Circuit has explained, "'must be given wide latitude with regard to case management' in order to achieve efficiency." *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (per curiam) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243, 246–48 (3rd Cir. 2013)). This necessarily includes the "discretion to structure a procedural framework for moving the cases as a whole as well as individually," including by determining the procedure for selecting bellwether cases for trial. *See In re PPA*, 460 F.3d at 1231-32.

This Court has done just that. Indeed, this Court has twice established a thorough and reasoned bellwether selection process. The first came in Case Management Order No. 12, entered on December 3, 2021, wherein the Court expressly set forth "procedures … for the identification

and selection of individual cases to be tried in this MDL" "[i]n the interest of effective and efficient case management of this complex litigation." (MDL ECF No. 587). Implementing the Court's bellwether selection framework, the parties worked up a set of 16 cases over two years—eight of which were selected by MDL Plaintiffs and eight of which were selected by Defendants—culminating in the submission of confidential one-page reports describing each case's strengths and weaknesses. (MDL ECF Nos. 803, 1116). The Court then selected six potential bellwethers for full case-specific fact and expert discovery. (MDL ECF No. 1317). After MDL Plaintiffs voluntarily dismissed two of those cases, and after completion of fact and expert discovery, the Court ultimately excluded MDL Plaintiffs' general causation expert and granted summary judgment for Defendants in the four remaining bellwethers. (MDL ECF No. 5238). And in doing so, the Court identified next steps for the MDL's second bellwether selection process, "intend[ing] to expeditiously identify a new set of trial cases and set a tight schedule for limited discovery and trial. (*Id.* at 8). The Court, as before, directed MDL Plaintiffs to select eight cases and Syngenta and Chevron to select eight between them. (MDL ECF. No. 803). The *Williford* Plaintiffs ask this Court to discard all of that process, and all of the parties' experience following it, to thrust themselves to the front of this MDL's trial line. Tellingly, the *Williford* Plaintiffs cite *no* case granting such a motion.

To be sure, the *Williford* Plaintiffs cite examples of MDL courts establishing separate tracks for the resolution of certain sets of cases. *See* Mot. at 5. But *none* of those remotely resemble the procedural posture presented here, where plaintiffs who fought tooth-and-nail to avoid federal court now seek to jump the trial line once within it and only after a loss in its preferred state court forum. MDL courts instead typically create separate tracks only when one or more consolidated cases concern a unique plaintiff or plaintiffs asserting unique claims. *Compare In re*

9

*Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig.*, 2020 WL 996802, at *8 (D. Kan. Mar. 2, 2020) (denying Motion to Establish Separate Litigation Tracks when "all Plaintiffs are purchasers of Defendants' dog food products bringing the same types of consumer-protection claims"), *with In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2019 WL 294803, at *2-3 (D. Kan. Jan. 23, 2019) (utilizing separate litigation tracks for antitrust claims under Section 2 of the Sherman Act and for consumer class actions alleging antitrust, federal RICO Act, and state consumer protection law claims). The *Williford* Plaintiffs' claims here, however, fall squarely within the core ambit of the Paraquat MDL. *See, e.g.*, Mot. at 2 ("After more than 25 years of significant exposure to Paraquat, Mr. Williford was diagnosed with Parkinson's Disease in 2021.").

All the *Williford* Plaintiffs are left with, then, is the purported advanced posture of their case as rationale for this Court to invoke its "broad discretion." Mot. at 4. Yet a general and vague appeal to the MDL's abilities should not trump the specific and detailed bellwether selection process that this Court has already laid out—and that the parties have already successfully followed. The ramifications for disrupting that process, and the careful coordination achieved by the parties to date, cannot be underestimated. For one thing, elevating *Williford* above the other thousands of cases in this MDL would create "competing groups of lead Plaintiffs' counsel," which could, in turn, "create inconsistency, inefficiency, and unnecessary costs by confusing the channels of communication and opening the door to duplicative and/or conflicting litigation efforts, thereby frustrating the purpose of MDL treatment." *In re Hill's Pet Nutrition*, 2020 WL 996802, at *8. But for another, it would be a tacit endorsement of the *Williford* Plaintiffs' gamesmanship throughout this litigation—from Council-Oxford's strategic joinder all the way to its eventual strategic dismissal. Should the Court reward those tactics by allowing the *Williford* Plaintiffs to

jump the line, it would be encouraging similar motions by other plaintiffs seeking to evade the orderly bellwether process that this Court has established.

### III.  *WILLIFORD* IS NOT "NEARLY TRIAL-READY" AS PLAINTIFFS SUGGEST.

Finally, contrary to the *Williford* Plaintiffs' assertions, *Williford* is not "nearly trial-ready." Mot. at 5.  Syngenta does not dispute that the parties completed case-specific, state court fact and expert discovery in Hillsborough County Circuit Court.  But all of that discovery—and most critically, that concerning experts—occurred under the Florida, not Federal, Rules of Civil Procedure.  Left unmentioned by the *Williford* Plaintiffs here is the fundamental difference between the two: the Florida Rules of Civil Procedure, unlike their federal counterpart, do not require expert witnesses to submit reports detailing their opinions.  *Cf.* Fed. R. Civ. P. 26(a)(2)(B) (requiring expert witnesses to prepare and submit a written report of their opinions and basis and reasons for each opinion).  Instead, all that the Florida Rules of Civil Procedure require is responses to interrogatories identifying each expert's opinions and a summary of the grounds for each opinion, Fla. R. Civ. P. 1.280(b)(5)(A)(i), while also permitting parties to obtain limited information about an expert's biography and case involvement through disclosures, *id.*, 1.280(b)(5)(A)(iii), and deposition.  It is unsurprising, then, that *none* of the *Williford* Plaintiffs' experts have submitted reports.

Even if the *Williford* case were selected as a bellwether, expert discovery would start anew, with the *Williford* Plaintiffs' experts submitting reports compliant with Federal Rule of Civil Procedure 26, and then sitting for depositions.  Syngenta's experts, in turn, would submit reports responsive to Plaintiffs' expert reports, after which they, too, would be deposed.  Only then would the parties brief the admissibility of these experts under Federal Rule of Evidence 702.  All of this is a far cry from the *Williford* Plaintiffs' assertion that, for *Williford* to head to trial, "[a]ll that

11

remains to be done is briefing and determinations on dispositive motions and expert challenges under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." Mot. at 5. The *Williford* Plaintiffs may wish to hurdle over the Federal Rules in their desire to skip to the front of the trial line. But as this Court has explained before, "MDLs are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance." (MDL ECF No. 491 (quoting *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020))).

## CONCLUSION

For the foregoing reasons, Syngenta respectfully requests the Court deny the *Williford* Plaintiffs' Motion for the Entry of a Scheduling Order and Trial Setting.

Dated: July 12, 2024

Respectfully submitted,

*/s/ Ragan Naresh*
Ragan Naresh
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. N.W.
Washington, D.C. 20004
Tel: 202.389.5000
Fax: 202.389.5200
ragan.naresh@kirkland.com

Leslie M. Smith, P.C.
Bradley H. Weidenhammer, P.C.
KIRKLAND & ELLIS LLP
333 W Wolf Point Plaza
Chicago, IL 60654
Tel: 312.862.2000
leslie.smith@kirkland.com
bradley.weidenhammer@kirkland.com

***Counsel Syngenta Crop Protection, LLC***

## CERTIFICATE OF SERVICE

I certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will provide notice to all users of record.

*/s/ Ragan Naresh*
Ragan Naresh
