IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| | MDL No. 3004 |
| This Document Relates to: | |
| *Allen Williford & Lydia Williford v. Syngenta Corp. Protection, LLC*, No. 3:23-pq-02887-NJR | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiffs Allen and Lydia Williford ("the Willifords") seek the entry of a Scheduling Order and Trial Setting in their individual case. (Doc. 22). Specifically, the Willifords want their case—and only their case—set for dispositive motion briefing and trial on an expedited basis because of its advanced procedural posture compared to other cases in this multidistrict litigation. *Id.* Defendant Syngenta Crop Protection LLC ("Syngenta") opposes the Willifords' motion, arguing that an expedited trial in a single member case would disrupt an orderly bellwether process.[1]

## BACKGROUND

The Willifords initially filed this action on July 29, 2021, in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida. (Doc. 1 at ¶ 1). They alleged that Syngenta and other Defendants (including an in-state Defendant from Florida (Council-Oxford, Inc. ("Council-Oxford"))) manufactured and sold paraquat to Allen

---

[1] Plaintiffs' Leadership in this MDL takes no position on this motion.

Williford, who then developed Parkinson's Disease after being exposed to it. *Id.* at ¶¶ 2-3.

On January 5, 2022, the Florida court granted Council-Oxford's motion to dismiss the Willifords' punitive damages claims. *Id.* at ¶ 7. After their request to reassert their punitive damages claims was denied in May 2023, *Id.* at ¶ 10, the Willifords voluntarily dismissed Council-Oxford as a defendant in this action. *Id.* at ¶ 11.

With Council-Oxford dismissed, Syngenta removed the case to federal court. The Willifords did not contest removal as the parties were now completely diverse and subject matter jurisdiction was secure under 28 U.S.C. § 1332(a). On August 18, 2023, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this Court for coordinated and consolidated pretrial proceedings under 28 U.S.C. § 1407. (Doc. 14).

Meanwhile, this MDL proceeded through the first round of bellwether litigation while also growing rapidly in size—it included over 5,000 member cases by the time the Willifords' case reached it. The first bellwether cases were resolved on summary judgment in April 2024. (MDL Dkt. 5237 & 5238). In its order dismissing the first set of bellwether cases, the Court signaled its intention to "expeditiously identify a new set of trial cases and set a tight schedule for limited discovery and trial." (MDL Dkt. 5238). To that end, the parties presented 16 member cases to the Court as potential bellwether candidates. The Court identified ten of these cases for limited case-specific discovery on August 6, 2024. (MDL Dkt. 5341). As of December 2024, limited case-specific discovery was complete in six of these cases, and the parties urged the Court to select the next round of bellwether cases from this subset of six.

Today the Court issued an order selecting all six cases for further case-specific

discovery and setting aggressive scheduling orders for summary judgment and *Daubert* briefing as well as for trial. (MDL Dkt. 5536). The first of these bellwether cases is scheduled to be tried later this year, starting October 14.

## DISCUSSION

Multidistrict litigation often involves the consolidation and coordination of cases at varying procedural postures. *In re TR Labs Patent Litig.*, 896 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012). It is thus well-settled that member cases within an MDL may proceed on different tracks and have their pretrial proceedings concluded at different times. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1385 (J.P.M.L. 2015). Thus, "to the extent that the somewhat more advanced status of [certain member cases] warrants their expedited treatment, the transferee judge is free to handle them accordingly." *Id.* "[T]he degree of consolidation and coordination is a matter soundly dedicated to the discretion of the transferee judge." *In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1357 (J.P.M.L. 2013).

The Willifords have cited several cases for the general proposition that district courts may advance member cases within an MDL on different litigation tracks. This discretionary authority, they argue, permits this Court to fast track their case to trial based on its advanced procedural posture. The Willifords are correct that the Court *can* establish a separate litigation track for their case. But whether such an order comports with sound case management practices is an entirely separate question. And considering the current posture of this MDL, including the ongoing second round of bellwether litigation, the Court is reluctant to overhaul a carefully crafted case management process

so that one out of more than 6,000 cases can race to trial.

None of the Willifords' authorities support the relief they seek. They have cited only one case where an MDL court allowed a particular member case to proceed on a separate litigation track. *In re EpiPen (Epinephrine Injection, USP) Mktg. Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2019 WL 294803 (D. Kan. Jan. 23, 2019) ("*EpiPen*"). In *EpiPen*, individual consumers and third-party payors filed all but one of the lawsuits alleging federal and state antitrust violations by the maker of the EpiPen (Mylan). *Id.* at *1. The other lawsuit was filed by Sanofi-Aventis U.S. LLC, one of Mylan's competitors, and it asserted three claims under Section 2 of the Sherman Antitrust Act. *Id.* at *2. The JPML and the MDL court recognized that the consumer actions and the Sanofi action "present[ed] unique factual and legal issues." *Id.* These differences warranted the creation of separate litigation tracks that would accommodate the varying legal theories, factual records, and case management considerations at play. *Id.*

Here, the Willifords' case is one of several thousands of personal injury actions that make up this MDL. It does not present a unique legal theory or party (like a competitor) that would warrant the individualized treatment that Sanofi's action received in *EpiPen*. And, without such unique characteristics compared to the other personal injury cases in this MDL, *EpiPen*'s reasoning has limited relevance here.

The Willifords also argue that a separate track for their case would benefit additional Plaintiffs in this MDL because their case relies on "discovery conducted outside of the MDL and on experts that are not expected to be designated" in any future bellwether cases. (Doc. 22 at 2). But these distinctive features of a case, especially with

respect to expert discovery, can undermine rather than advance the goal of consolidated and coordinated pretrial proceedings. The Willifords' attorneys represent more than 200 Plaintiffs in this MDL and in related state court cases around the country. These Plaintiffs, they argue, "intend to rely on the experts designated in [the Willifords' case] as well as other experts being independently developed by The Miller Firm" (the law firm representing the Willifords). Thus, resolution of dispositive motions and a trial in this case could benefit other Plaintiffs who are represented by the same counsel. But prioritizing one case over thousands of others, when an expedited dispositive briefing and trial schedule benefits only the clients of one law firm as opposed to the broader Plaintiff pool, would be inconsistent with the goal of consolidation and coordination under 28 U.S.C. § 1407. *See In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, No. 19-md-2887-JAR-TJJ, 2020 WL 996802, at *8 (D. Kan. Mar. 2, 2020) ("[E]stablishing multiple litigation tracks with competing groups of lead Plaintiffs' counsel at this time would be more likely to create inconsistency, inefficiency, and unnecessary costs by confusing the channels of communication and opening the door to duplicative and/or conflicting litigation efforts, thereby frustrating the purpose of MDL treatment.").

From the beginning of this MDL, this Court has sought to advance an informative bellwether process that can help the parties determine the strengths and weaknesses of the claims in the broader Plaintiff pool. *See In re Paraquat Prods. Liab. Litig.*, No. 3:21-md-3004-NJR, 2023 WL 3948249, at *3 (S.D. Ill. June 12, 2023). The Court and parties continue to devote considerable resources to this process so that the selected cases may "serve the twin goals of being informative indicators of future trends and catalysts for an ultimate

resolution." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 919 n.3 (6th Cir. 2022) (internal quotation marks and citation omitted). And although the cases in this MDL retain their individuality and are not treated as a monolith, it is this Court's responsibility to manage the MDL to the benefit of *all* Plaintiffs and Defendants (not just those named in this case). At best, prioritizing the Willifords' case would benefit a small subset of Plaintiffs in this MDL, while diverting resources from the bellwether cases that are "intended to be representative of their peers . . . serving as the common springboard from which Court decisions on substance . . . , procedure, and discovery can then apply to like cases and claims." *In re Society Ins. Co. Covid-19 Bus. Interruption Protection Ins. Litig.*, No. 20 C 5965, 2021 WL 3290962, at *4 (N.D. Ill. Aug. 1, 2021). Thus, to protect the integrity and advancement of the bellwether cases in this MDL, it would be inappropriate to allow this case to leapfrog them.

  The Court acknowledges that the Willifords' case substantially completed fact and expert discovery before its removal to federal court. Syngenta conducted a compulsory medical examination of Mr. Williford, the parties exchanged expert interrogatories under the Florida Rules of Civil Procedure, and all depositions of fact and expert witnesses were apparently completed. (Doc. 22 at 1; Doc. 24 at 11). With this Order, the Willifords will be forced to await the resolution of their case longer than they would like. A delayed resolution is almost never desirable, especially when the parties have devoted time and effort to discovery. But the Court must balance the Willifords' interest in rapidity against the case management considerations that affect every case in this MDL. These considerations warrant the prioritization of bellwether cases over the Willifords' case

because of their ability to inform all cases in this MDL, not just a few.

## CONCLUSION

For these reasons, the Willifords' Motion for Entry of a Scheduling Order and Trial Setting (Doc. 22) is **DENIED without prejudice.** The Willifords are invited to renew their motion after the conclusion of the second round of bellwether litigation.

**IT IS SO ORDERED.**

**DATED:  January 23, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**